UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>SANFORD ABRAMS, )<br> )<br>　　　　　Plaintiff, )<br> )<br>　　　v. )<br> )<br>CARL J. TRUSCOTT, )<br>Director, Bureau of Alcohol, Tobacco, )<br>　　Firearms & Explosives )<br> )<br>　　　　　Defendant. )<br>_____ ) | Civil Action No.: 06-643 (CKK) |

**MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER**

Defendant in this case, Carl J. Truscott, Director, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), moves to dismiss this case for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).  Alternatively, Defendant moves to transfer the case to the U.S. District Court for the District of Maryland, pursuant to 28 U.S.C. § 1404(a).  Plaintiff in this case seeks to bar the ATF from prosecuting him.  Because there is no justiciable controversy, Plaintiff lacks standing and his case should be dismissed.  In addition, Plaintiff is litigating essentially the same claims in a case he filed in the District of Maryland (now pending before the Fourth Circuit).  Accordingly, transfer would be appropriate if the Court finds that it does have jurisdiction.

A memorandum in support of this motion is attached, along with a proposed order.

June 15, 2006                                    Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

            /s/
_____

ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204
alan.burch@usdoj.gov

Of Counsel:

Stephen R. Rubenstein
Chief Counsel

Joel J. Roessner
Associate Chief Counsel (Litigation)
Bureau of Alcohol, Tobacco, and Firearms

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SANFORD ABRAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 06-643 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| CARL J. TRUSCOTT, | ) | |
| Director, Bureau of Alcohol, Tobacco, | ) | |
| Firearms & Explosives | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT MOTION TO DISMISS
OR IN THE ALTERNATIVE TO TRANSFER**

Defendant in this case, Carl J. Truscott, Director, Bureau of Alcohol, Tobacco, Firearms

and Explosives ("ATF"), moves to dismiss this case for lack of subject matter jurisdiction,

pursuant to Rule 12(b)(1).  Plaintiff in this case seeks to bar the ATF from prosecuting him for

dealing in firearms in violation of 18 U.S.C. § 921(a)(21)(C).  Because there is no justiciable

controversy presented in this case, Plaintiff lacks standing and his case should be dismissed.

Alternatively, in the event the Court determines that it does have jurisdiction, Defendant moves

to transfer the case to the United States District Court for the District of Maryland, pursuant to

28 U.S.C. § 1404(a).  Transfer to Maryland is appropriate because Plaintiff brought suit in the

District of Maryland and raised essentially the same claims.

**Background**

Plaintiff, as the president of RSM, Inc. d/b/a Valley Gun, held a Federal Firearms License

as a dealer in firearms, (Compl. ¶ 4), meaning he could engage in the business "of dealing in

firearms as a regular course of trade or business with the principle objective of livelihood or

profit through the repetitive purchase and resale of firearms" per 18 U.S.C. § 921(a)(21)(C).

Much of the relevant background in this case is a matter of public record, because Plaintiff is

challenging the ATF's seizure of RSM's Federal Firearms License in the a civil action he filed in

the District of Maryland.  See RSM, Inc. v. Herbert, No. WMN-05-847 (D. Md. filed Mar. 29,

2005).

**A.    Plaintiff's Challenge to ATF's Seizure of RSM's Federal Firearms License In
        the District of Maryland.**

In 1997, an ATF inspection of RSM uncovered several violations of the Gun Control Act

(GCA) of 1968, as amended, and its corresponding regulations, 27 C.F.R. Part 478.  See RSM,

Inc. v. Herbert, No. WMN-05-847, Mem. Op. at 2 (D. Md. Feb. 23, 2006), attached hereto as Ex.

1.  The violations included deficiencies in RSM's Acquisition and Disposition Records ("A&D

Book"), incorrectly or incomplete Firearms Transaction Records ("Form 4473"), and 45 missing

firearms.

A 1999 inspection uncovered more discrepancies in the A&D Book, improperly

completed Form 4473s, and missing firearms.  See id. at 2-3.  In January of 2000, a "warning

conference" was held with plaintiff, at which he was warned that future violations could result in

the revocation of his dealer's license.  Id.  Plaintiff indicated that he understood the

recordkeeping requirements and would improve in the future.  Id.

In September 2001, another ATF inspection found the same A&D Book and Form 4473

deficiencies and 133 missing weapons, as well as a failure to record National Instant Criminal

Background Check System (NICS) information as required by 27 C.F.R. § 478.102 and a failure

to record multiple handgun sales as required by 27 C.F.R. § 478.126a.  Id. at 3.  After the 2001

inspection a second warning conference was held with plaintiff.  Id.

2

Another ATF inspection in May 2003 uncovered numerous problems again with RSM's A&D Book and Form 4473s, and found 422 firearms unaccounted for (later reduced to 287). <u>Id.</u> at 4. ATF issued a Notice of Revocation of License on May 4, 2004. <u>Id.</u>; Compl. ¶ 6. RSM requested an administrative hearing and one was held on October 6, 2004. <u>RSM v. Herbert</u> at 3; Compl. ¶¶ 7-8. On October 29, 2004, the hearing officer found that RSM willfully violated the GCA and its regulations and upheld the revocation. <u>RSM v. Herbert</u> at 4-5. A Final Notice of Revocation was issued on February 2, 2005; a stay of the effective date was issued while RSM sought judicial review. <u>Id.</u> at 5; <u>accord</u> Compl. ¶ 9.

RSM petitioned the United States District Court for the District of Maryland pursuant to 18 U.S.C. § 923(f)(3) for a *de novo* review of ATF's decision to revoke its license. <u>RSM v. Herbert</u> at 5; Compl. ¶ 10. The district court upheld the revocation and dismissed RSM's petition on February 23, 2006. <u>RSM v. Herbert</u> at 1, 11; Compl. ¶ 11. The ATF seized RSM's Federal Firearms License the next day. Compl. ¶ 12.

### B.   Plaintiff's Intentions to Sell the Firearms and This Case.

ATF agreed to give RSM thirty days from February 23, 2006 to wind down its operations. On February 24, 2006, plaintiff's attorney contacted ATF Assistant Chief Counsel Jeff Cohen via e-mail to clarify what could and could not be done within the 30-day window. <u>See</u> Ex. to Compl. (email chain). On February 27, 2006, Mr. Cohen advised Mr. Gardiner that no new sales of inventory could be conducted and no new firearm purchases could be made after February 23, 2006, and suggested that plaintiff contact other Federal firearms licensees to dispose of RSM's remaining inventory, which is believed to consist of thousands of firearms. <u>Id.</u> Mr. Gardiner then asked if the inventory could be transferred to plaintiff personally; Mr. Cohen responded yes, but cautioned Mr. Gardiner that because plaintiff no longer held a license,

he could not "engage[] in the business" of dealing in firearms.  <u>Id.</u>  Mr. Gardiner responded that

the term "engaged in the business" means the repetitive purchase and resale of firearms, not only

sales of firearms.  <u>Id.</u>  Mr. Cohen then replied that "If the situation arises, a court can interpret

the meaning of that phrase applying the specific facts of that case.  As always, you are free to

advise your client based on your interpretation of the Gun Control Act."  <u>Id.</u>

RSM then filed a motion in the district court in Maryland to compel the ATF to permit

RSM to continue to operate until and unless the district court's decision became final and

unappealable.  <u>See</u> <u>RSM, Inc. v. Herbert</u>, No. WMN-05-847, Mem. Op. at 1 (D. Md. Mar. 15,

2006) (denying the motion), attached hereto as Ex. 2.  RSM appealed the case to the Fourth

Circuit.  <u>See</u> <u>RSM v. Herbert</u>, No. 016-1393 (4th Cir. docketed Apr. 3, 2006).

In the instant action before this Court, Plaintiff alleges that "an agent and employee of

Defendant has threatened Plaintiff Abrams with seizure and forfeiture of the inventory and with

criminal prosecution.  <u>See</u> Compl. ¶ 22; <u>see also</u> <u>id.</u> ¶ 26 ("Defendant's agent/employee has

threatened Plaintiff Abrams with seizure and forfeiture of the inventory and with criminal

prosecution[.]").  Plaintiff asks the Court to enjoin ATF from such forfeiture and prosecution and

declare the prospective sale of plaintiff's firearms to be lawful.

## Standard of Review

A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint and, therefore,

in deciding a motion to dismiss under Rule 12(b)(6), the Court must presume that the factual

allegations in the complaint are true and liberally construe those factual allegations in favor of

the plaintiff.  <u>See, e.g.</u>, <u>Shear v. NRA</u>, 606 F.2d 1251, 1253 (D.C. Cir. 1979).  In addition to the

liberally construed facts in the complaint, the Court may consider certain additional evidence in

deciding the motion.  For example, the D.C. Circuit specifically held that federal courts may take

4

"judicial notice of facts on the public record," including judicial decisions, as part of the factual

assumptions used in evaluating a motion to dismiss under Rule 12(b)(6).  See Covad Comm. Co.

v. Bell Atlantic Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005).  See also Arizmendi v. Lawson,

914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996) ("In resolving a Rule 12(b)(6) motion to dismiss, a

court may properly look beyond the complaint to matters of public record including court files,

records and letters of official actions or decisions of government agencies and administrative

bodies, documents referenced and incorporated in the complaint and documents referenced in the

complaint or essential to a plaintiff's claim which are attached to a defendant's motion.").

     Legal conclusions, assertions, or arguments in the complaint are not to be presumed true,

liberally construed, or otherwise deferred to by the court.  See In re Delorean Motor Co., 991

F.2d 1236, 1240 (6th Cir. 1993).

## Argument

## I.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims.

### A.    Plaintiff Does Not Present a Justiciable Case or Controversy.

     Plaintiff fails to present a justiciable case or controversy.  The "threshold inquiry" for

subject matter jurisdiction is whether the complaint "alleges a 'case' or 'controversy' as required

by both Article III of the Constitution and the Declaratory Judgment Act [28 U.S.C. § 2201]."

Gem County Mosquito Abatement Dist. v. EPA, 398 F. Supp. 2d 1, 6 (D.D.C. 2005).  "Serv[ing]

to identify those disputes which are appropriately resolved through the judicial process is the

doctrine of standing."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal

citations omitted).  To establish standing, a plaintiff must meet three requirements.  "First, the

plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which

is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or

'hypothetical.'"  Id. (internal citations omitted).  "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court.'"  Id.  And third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  Id. at 561; see also Cruz v. American Airlines, Inc., 356 F.3d 320, 328 (D.C. Cir. 2004) ("To establish standing, the [plaintiff] must show that [defendant's] actions have caused them some concrete injury that this declaratory and injunctive relief will redress.")

## 1.    There is no "Actual Controversy" Regarding 18 U.S.C. § 921(a)(21)(C).

"An Article III court … may not adjudicate a dispute until it has … crystallized as an actual 'case' or 'controversy.'"  Pfizer Inc. v. Shalala, 182 F.3d 975, 980 (D.C. Cir. 1999).

> Before undertaking to decide any dispute brought before it, a federal court must first assure itself that the dispute presented by the parties represents a justiciable "case" or "controversy"; that is, … the factual claims underlying the plaintiff's challenge are concrete enough and the legal issues submitted for decision sharply focused enough to ensure that a genuine clash between the parties exists.

Gem County, 398 F. Supp. 2d at 6; see also Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) ("The basic inquiry is whether the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'").

There is no "actual controversy" as to the meaning of "engaged in the business" as defined by 18 U.S.C. § 921(a)(21)(C).  In order to be engaged in the business as a dealer, a person must in the regular course of business, with the principle objective of making a profit, *repeatedly purchase* and resell firearms.  This is consistent with plaintiff's claim that he "will

6

not be 'engaged in the business of selling firearms at wholesale or retail' within the meaning of

18 U.S.C. § 921(a)[(21)](C) as he will not be repetitively purchasing and reselling firearms."

Compl., Para. 21; see also id. Paras. 16-18.  It has been ATF's long standing position that (in

cases such as plaintiff's) when a dealer loses his license he can dispose of his inventory by

selling those firearms without being deemed to have engaged in the business without a license in

violation of 18 U.S.C. § 922(a)(1)(A).  Plaintiff will only run afoul of section 922(a)(1)(A) *if* he

chooses to *purchase and resell* firearms.  Therefore, there is simply no dispute as to the language

of section 921(a)(21)(C).  See Gem County, 398 F. Supp. 2d at 8 (The court held that because

"there is no real dispute between the Plaintiffs and EPA arising from its interpretations of the

two environmental statutes … standing appears to be absent."); id. (The "mere fact that EPA

issues or denies permits under the [Clean Water Act] does not by itself, create an adversarial

relationship, nor does it create a case or controversy between it and the Plaintiffs.")

### 2.      Plaintiff Has Suffered No Injury.

Plaintiff claims he has been threatened with "seizure and forfeiture of the inventory and

with criminal prosecution."  Compl. Para. 22.  While the "D.C. Circuit has recognized that '[a]

credible threat of imminent prosecution can injure [a] threatened party by putting [him] between

a rock and a hard place,'" such a threat must still be "credible and immediate, and not merely

abstract or speculative" to be considered an injury in fact.  Gem County, 398 F. Supp. 2d at 8;

see also United Farm Workers, 442 U.S. at 298 ("[P]ersons having no fears of … prosecution

except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.");

Seegars v. Gonzales, 396 F.3d 1248, 1252 (D.C. Cir. 2005) ("If the threat is imagined or wholly

speculative, the dispute does not present a justiciable case or controversy."), cert. denied, 126 S.

Ct. 1187 (2006).  "[A] general threat of prosecution is not enough to confer standing."  San

Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1127 (9th Cir. 1996).

Here there is no credible threat of prosecution.  In an e-mail exchange *in response to a question posed by Plaintiff's attorney*, agency counsel reminded Plaintiff's counsel that if Plaintiff "were to engage in dealing firearms without a license, the inventory involved in these violations would be subject to seizure and forfeiture and Mr. Abrams *could* be subject to criminal prosecution."  Ex. to Compl. (emphasis added).  This is simply a statement of what *could* happen *if* plaintiff violates the law.  Moreover, the authority to bring a criminal prosecution for a violation of the Federal firearms laws is solely within the province of the United States Department of Justice, generally the United States Attorney's Offices.  See United States v. Nixon, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); accord United States Attorneys' Manual 3-2.140.

Several pre-enforcement challenges have been made to various provisions of the Gun Control Act, some involving claims of future prosecution like this case, and the courts uniformly dismiss such cases for lack of injury and standing.  "Significantly, the mere 'possibility' of criminal sanctions applying does not itself create a case or controversy."  San Diego Gun Rights Comm., 98 F.3d at 1126 (finding no standing based upon the threat of prosecution where the plaintiffs alleged an intention to violate the Gun Control Act).  See Navegar, Inc. v. United States, 103 F.3d 994, 1001 (D.C. Cir. 1997) (finding no standing on the part of certain manufacturers because the court found the threat of prosecution inadequate, even where ATF agents visited the manufacturers and took an inventory of their weapons); National Rifle Ass'n of America v. Magaw, 132 F.3d 272, 293-94 (6th Cir. 1997) (although some of the individual plaintiffs telephoned ATF agents, "submitted a hypothetical question, and received an answer

8

that the questioned activity could subject them to federal prosecution," the Sixth Circuit still

found that such activity "does not confer standing" because the "threat of prosecution against

these plaintiffs is still abstract, hypothetical, and speculative"); Crooker v. Magaw, 41 F. Supp.

2d 87, 88-90 (D. Mass. 1999) (plaintiff, having received a negative response from ATF to his

written request to possess a certain kind of ammunition, could not show an injury in the fear of

possible future prosecution).

       This facts presented in this case are similar to those in NRA and Crooker in that Plaintiff

asked ATF for advice, did not like the answer, and thus claimed he was "threatened" with

prosecution.  However, an individual's dislike of, or disagreement with, the answer he receives

is irrelevant.  The "threat" faced by Mr. Abrams—if he breaks the law at some time in the future,

he may be prosecuted as a result—is the same "threat" faced by every member of society.

> If the statutes that might be possibly enforced against respondents are valid laws, and if charges under these statutes are not improvidently made or pressed, the question becomes whether any perceived threat to respondents is sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried  for their offenses ….  But it seems to us that attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear … takes us into the area of speculation and conjecture.

O'Shea v. Littleton, 414 U.S. 488, 496-97 (1974).  "In so-called 'threat of prosecution' cases, the

distinction has been made between specific and general threats of an intent to commence legal

action."  Venetian Casino Resort v. Cortez, 96 F. Supp. 2d 1102, 1107-08 (D. Nev. 2000) (The

district court found a threat to be general, and thus not an injury, where, "according to the

Complaint, the [defendant] has merely poised a 'threat of litigation' of 'significant legal

repercussions' … [s]uch allegations, at best, establish only speculative and arguably chimerical

fears."); see also Eckles v. City of Corydon, 341 F.3d 762, 768 (8th Cir. 2003) (The court found

no injury in fact where plaintiff received a letter from the County stating that the failure of

plaintiff to remove signs from his property *could* result in action from the City.); Stubbs v.

Goldschmitd, No. Civ. 04-6029-AA, 2004 WL 1490323, at *4 (D. Or. June 29, 2004)

(dismissing for lack of standing where the University of Oregon sent plaintiff a letter stating that

the University would enforce its policy of no weapons on campus, even if plaintiff had a valid

state permit: "No threat to plaintiff's rights appear beyond that implied by the existence of the

regulation itself.")  The e-mail correspondence at issue here is analogous to the letters in Eckles

and Stubbs--the possibility that action *could* be taken by some other, independent entity *if*

plaintiff engages in certain conduct.

Like the cases cited above, the facts alleged by plaintiff Abrams do not show that he is

injured by a *credible* or *imminent* threat of prosecution.  His allegations are speculative at best:

the Federal firearms laws *may* be enforced against him *if* he violates those laws.  See National

Rifle Ass'n, 132 F.3d at 294 ("Every criminal law, by its very existence, may have some chilling

effect on personal behavior.  That is the reason for its passage.")

**3.      Plaintiff Cannot Show Redressability Either.**

Even if Plaintiff were able to show an injury, plaintiff is unable to show that a court

could fully redress that injury as required by the third prong of the standing analysis.  See Lujan,

504 U.S. at 561.  Enjoining the ATF Director from prosecuting plaintiff, as plaintiff requests,

would remedy nothing; it would prohibit the Director from taking an action he does not have the

authority to do in the first place.  For plaintiff to receive actual relief the appropriate official to

be enjoined would be the United States Attorney for the District of Maryland—where plaintiff

resides—*or* the district in which plaintiff would violate the law.

**B.      Plaintiff's Case Does Not "Arises Under" Federal Law or the Constitution**

Plaintiff does not cite to any federal law or constitutional provision conferring

jurisdiction upon the court; he cites only to 28 U.S.C. § 1331 as the basis for jurisdiction.  See

Compl. Para. 2.  A party seeking to invoke a federal court's jurisdiction has the burden of

establishing that jurisdiction exists."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377

(1994).  While section 1331 confers jurisdiction in the federal courts for cases that "arise under"

the Constitution and laws of the United States, "[s]ection 1331 *does not independently or*

*separately confer jurisdiction.*"  Gem County, 398 F. Supp. 2d at 12 (emphasis added); see also

Government of Guam v. American President Lines, Ltd., 809 F. Supp. 150, 154 (D.D.C. 1993)

("section 1331 … confers jurisdiction *only* when the claim 'arises under' a federal statute")

(emphasis added), aff'd, 28 F.3d 142 (D.C. Cir. 1994); Mead Corp. v. United States, 490 F.

Supp. 405, 407 (D.D.C. 1980) ("section 1331 does not in itself create substantive rights or causes

of action, but only confers jurisdiction on the district court to hear certain cases that are

supported by an independently created substantive cause of action") (internal citation omitted),

aff'd, 652 F.2d 1050 (D.C. Cir. 1981).  Plaintiff has provided no "independently created

substantive cause of action" and section 1331, standing alone, is not sufficient to confer

jurisdiction.

**C.      The United States Has Not Waived Sovereign Immunity.**

Moreover, because Plaintiff has brought this claim against an official of the Federal

government acting in his official capacity, the jurisdictional statute on which the claim is based

must contain an express waiver of sovereign immunity.  See FDIC v. Meyer, 510 U.S. 471, 475

(1994).  "It is well established that the United States is immune from suit unless a waiver of

federal sovereign immunity was 'unequivocally expressed' in the statutory text."  Jordan v.

11

Evans, 404 F. Supp. 2d 28, 31 (D.D.C. 2005); see also El-Shifa Pharm. Indus. Co. v. United States, 402 F. Supp. 2d 267, 270 (D.D.C. 2005) ("A waiver of 'sovereign immunity must be unequivocally expressed in statutory text' and will be 'strictly construed, in terms of its scope, in favor of the sovereign.'")  Plaintiff bases jurisdiction on 28 U.S.C. § 1331; however section 1331 is "only a general jurisdictional statute and such a statute does not provide a general waiver of sovereign immunity."  Bliss v. England, 208 F. Supp. 2d 2, 4 (D.D.C. 2002); see also Cobell v. Babbitt, 30 F. Supp. 2d 24, 39 n.15 (D.D.C. 1998) (section 1331 does not constitute a waiver of sovereign immunity); Saunders v. Reno, Civ. A. No. 93-1829 (RCL), 1993 WL 771009, at *2 (D.D.C. Dec. 20, 1993) (Section 1331 "confers general jurisdiction, and sovereign immunity is not waived by general jurisdictional statutes.  Rather, section 1331 presupposes a specific waiver of sovereign immunity under some other federal statute.") (internal quotation marks and citation omitted), aff'd, No. 94-5007, 1994 WL 541497 (D.C. Cir. May 12, 1994); Stich v. United States Department of Justice, Civ. A. No. 86-2523, 1987 WL 9237 (D.D.C. Mar. 27, 1987) ("[i]t is well-settled that neither the federal question statute, 28 U.S.C. § 1331, nor the Declaratory Judgment Act, 28 U.S.C. § 2201, constitute waivers of sovereign immunity.")  Section 1331 does not waive the sovereign immunity of the United States, as such the United States is immune from suit.

### D. Plaintiff's Request for Equitable Relief Does Not Remedy the Lack of Jurisdiction

#### 1. Plaintiff is Not Entitled to Injunctive Relief.

Plaintiff's request for injunctive relief does not surmount the above jurisdictional defects, including his lack of injury for standing purposes.  Regardless of how Plaintiff characterizes this action, he remains unable to show the alleged "threat" constitutes an injury.  See Wisconsin Gas

12

Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Injunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time.'"); San Diego County Gun Rights Comm., 98 F.3d at 1126 ("Because plaintiffs seek declaratory and injunctive relief only, there is a further requirement that they show a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury.")

As for the waiver of sovereign immunity, although plaintiff does not cite to the Administrative Procedure Act (APA), which does provide a waiver of sovereign immunity in certain situations, the APA's waiver of sovereign immunity is not available here because 5 U.S.C. § 704 provides judicial review for *final* agency action only. See El-Shifa Pharm., 402 F. Supp. 2d at 272 ("The APA, however, provides for judicial review only of final agency action. 5 U.S.C. § 704."); Gem County, 398 F. Supp. 2d at 11 ("Judicial review may be obtained under the APA if the agency action is considered 'final.'")  "Absent an independent provision for review, however, the APA permits review only of 'final agency action.'"  Public Citizen v. Office of United States Trade Representatives, 970 F.2d 916, 921 (D.C. Cir. 1992).

Final agency action "must mark the consummation of the agency's decision-making process, not be merely interlocutory in nature, and the action must be one by which rights or obligations have been determined." Gem County, 398 F. Supp. 2d at 11.  Actions that are "purely advisory and in no way affected the legal rights of the relevant actors,' fall outside the definition of 'final agency action.'" Trudeau v. Federal Trade Comm'n, 384 F. Supp. 2d 281, 289 (D.D.C. 2005) (finding press release issued by the FTC about its settlement with plaintiff was not final agency action); see also id. at 294 (finding that even if plaintiff's argument that "section 702 waives sovereign immunity in the absence of final agency action under section 704," plaintiff still "must identify some provision other than section 704 of the APA that gives

rise to a cause of action"); Lac Vieux Desert Band of Lake Superior Chippewa Indians v.

Ashcroft, 360 F. Supp. 2d 64, 68 n.4 (D.D.C. 2004) (finding that "the advisory letter" of the

General Counsel for the National Indian Gaming Commission which warned of possible future

criminal prosecution if certain gaming continued "could not be considered a 'final agency

action'").  An e-mail exchange with an ATF Attorney, initiated by Plaintiff's attorney, is in no

way "final agency action"—it is not the "consummation of the decision-making process" nor did

it determine "rights or obligations."  Rather, like the letter in the Lac Vieux case, the "advisory"

e-mail at issue here cannot be considered a final agency action; as such sovereign immunity has

not been waived.

##           2.         Plaintiff is Not Entitled to Declaratory Relief.

The fact that Plaintiff brings this suit pursuant to the Declaratory Judgment Act does not

alter any of the above analysis.  As discussed, plaintiff presents no actual case or controversy for

purposes of standing; therefore he presents no actual controversy for purposes of the Declaratory

Judgment Act.  See Gem County, 398 F. Supp. 2d at 7 ("An 'actual controversy' under the

Declaratory Judgment Act shares the same characteristics: 'the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment.'"); Federal Express Corp. v. Air Line Pilots Ass'n, 67 F.3d 961, 963-64 (D.C. Cir.

1995) ("The requirement of a case or controversy is no less strict when a party is seeking a

declaratory judgment than for any other relief.  In order to meet this threshold requirement, there

must be 'a real and substantial controversy admitting of specific relief through decree of a

conclusive character, as distinguished from an opinion advising what the law would be upon a

hypothetical state of facts.'") (internal citation omitted); see also p. 6, supra.

Likewise, as Plaintiff has not established a proper basis for jurisdiction, he cannot remedy that failure by citing to the Declaratory Judgment Act.  "Section 1331 does not independently or separately confer jurisdiction …. Similarly, it is well-settled that the Declaratory Judgment Act does not independently create jurisdiction." <u>Gem County</u>, 398 F. Supp. 2d at 12; <u>see also id</u>. ("[A]bsent [an] independent legal right, the Declaratory Judgment act does not confer jurisdiction.")  "[T]he availability of [declaratory] relief presupposes the existence of a judicially remediable right."  <u>C&E Servs., Inc. v. District of Columbia Water & Sewer Auth.</u>, 310 F.3d 197, 201 (D.C. Cir. 2002).  As there is no "independent legal right," plaintiff is unable to create jurisdiction by seeking declaratory relief.

Finally, the Declaratory Judgment Act does not provide the otherwise missing waiver of sovereign immunity.  The Declaratory Judgment Act "does not waive sovereign immunity." <u>Lac Vieux</u>, 360 F. Supp. 2d at 66 n.3; <u>see also</u> <u>Alaska Legislative Council v. Babbitt</u>, 15 F. Supp. 2d 19, 26 n.8 (D.D.C. 1998) ("if the agency's action is not final so as to be reviewable under the [APA], appellant is not helped on the question of jurisdiction by the Declaratory Judgment Act"), <u>aff'd</u>, 181 F.3d 1333 (D.C. Cir. 1999); <u>Stich</u>, 1987 WL 9237, at *2 ("It is well-settled that neither the federal question statute, 28 U.S.C. §1331, nor the Declaratory Judgment Act, 28 U.S.C. § 2201, constitute waivers of sovereign immunity.").

## II.     Venue is More Appropriate in the District of Maryland.

The general venue provision of 28 U.S.C. § 1391(e) provides that:

A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, … or (3) the plaintiff resides.

15

Because the ATF Director is named in his official capacity, he "resides" in the District of

Columbia and in Maryland because the ATF carries out its duties in both districts.  See Farmer v.

Hawk, No. 94-CV-2274 (GK), 1996 WL 525321, at *2 (D.D.C. Sept. 5, 1996) ("Public officials,

when sued in their official capacity, 'reside' in the District where they perform their official

duties.").

However, a defendant in a civil case may seek to transfer the case pursuant to 28 U.S.C.

§ 1404(a), which provides that "[f]or the convenience of parties, and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it

might have been brought."  The "burden is on the moving party to demonstrate that transfer

would be proper."  Deloach v. Philip Morris Cos., 132 F. Supp. 2d 22, 24 (D.D.C. 2000).  A

court "retains substantial discretion" as to whether to grant a transfer and should consider such

motions "according to individualized, case-by-case considerations of convenience and fairness."

Id.

A lawsuit may be transferred to another district only if it could have been brought in that

district originally, therefore, "the threshold question is whether this suit could have been brought

in the proposed transferee district."  Deloach, 132 F. Supp. 2d at 24.  This suit could have been

properly brought in Maryland because it is the district in which the plaintiff resides and where a

"substantial part of the events" occurred, within the meaning of the general venue statute in

section 1391(e).  Although the "plaintiff's choice of forum is ordinarily accorded a significant

degree of deference … such a choice receives substantially less deference where the plaintiff[],

as here, neither reside[s] in, nor ha[s] any substantial connection to, that forum."  Id.; see also

Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 52 (D.D.C. 2000) ("[S]ubstantially less

deference is warranted when the forum preferred by the plaintiff is not his home forum.").

16

Because plaintiff resides in the District of Maryland, conducted his business as a firearms dealer in the District of Maryland, had his licensed revoked in the District of Maryland, and challenged that revocation in the District of Maryland, his decision to bring this suit in the District of Columbia is entitled to "substantially less deference" than would otherwise be the case.  See Deloach, 132 F. Supp. 2d at 25 (The Court transferred the case out of the District of Columbia because "the only real connection this lawsuit has to the District of Columbia is that a federal agency headquartered here … is charged with generally regulating and overseeing" the subject matter.); Reiffin, 104 F. Supp. 2d at 52 (transferring the case out of the District of Columbia to the Northern District of California where "plaintiff is a resident of the state of California" and "will not be burdened by litigating in the Northern District of California, because the plaintiff himself chose that district as the forum for his clearly related, earlier-filed … action").

In addition, courts frequently look to several other "public- and private-interest factors" to decide if a transfer is appropriate.  "Private interest considerations traditionally include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." Holland v. A.T. Massey Coal, 360 F. Supp. 2d 72, 76 (D.D.C. 2004).  "Public interest considerations, by contrast, include (1) the transferee's familiarity with governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding controversies at home." Id. "In addition to these considerations, a transfer may also be appropriate where there is *ongoing related litigation in another jurisdiction*." Id. (emphasis added).

All of these factors weigh in favor of transferring this case to the District of Maryland

17

because it is: (1) Plaintiff's home forum, (2) Defendant's choice of forum, (3) where the

underlying events took place, (4) the site of "local interest," and (5) the forum in which related

litigation (i.e., the license revocation) has been adjudicated with an appeal currently pending.

See Holland, 360 F. Supp. 2d at 77 ("[T]he fact that there is an ongoing case dealing with similar

issues in another jurisdiction weighs very heavily in favor of a transfer under § 1404(a).  Simply

stated, judicial economy would not be best served by having similar claims proceed on parallel

tracks in neighboring jurisdictions.") (internal citations omitted); Reiffin, 104 F. Supp. 2d at 55

("As the D.C. Circuit has held, 'In fleshing out the phrase "for the convenience of the parties in

the interest of justice," the courts have considered . . . whether one circuit is more familiar with

the same parties and issues or related issues than other courts[.]'")  Due to Plaintiff's petition for

judicial review of the revocation, the District of Maryland is already familiar with the parties and

related issues.

 Moreover, there are no factors that weigh significantly in favor of the District of

Columbia.  The fact that ATF is headquartered in the District of Columbia is not controlling.

"[M]ere involvement of the part of federal agencies, or some federal officials who are located in

Washington D.C. is not determinative."  Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 25-

26 (D.D.C. 2002).  The dispute at issue arose between Plaintiff and ATF agency counsel,

corresponding via email.  Agency counsel was the attorney responsible for defending the

revocation of RSM--in the District of Maryland.  Mr. Cohen does not work at ATF

Headquarters.  Director Truscott, whose office is at ATF Headquarters, does not play an active

role in license revocations made in the Field Divisions, had no active involvement in the

revocation of RSM, or the e-mail exchange at issue.  See id at 26 (Transfer is appropriate

"especially where the involvement of government officials in Washington has not been

18

significant, and there is no real connection between the District of Columbia and this litigation other than the presence of federal agencies in this forum."); Cameron v. Thornburgh, 983 F.2d 253, 257 (D.C. Cir. 1993) (finding transfer proper where "Appellant's complaint did not allege a single rule or policy emanating from Washington that had affected his case."); Sierra Club v. Flowers, 276 F. Supp. 2d 62 (D.D.C. 2003) ("The court determines that the plaintiff's choice of forum merits little deference because the District of Columbia has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'"); Trout Unlimited v. United States  Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996) (transfer proper where none of the decision-making at issue occurred in the District of Columbia); but see Greater Yellowstone Coalition v. Bosworth, 180 F. Supp. 2d 124, (D.D.C. 2001) (distinguishing Trout Unlimited on its facts and finding that where plaintiffs alleged high-ranking government officials in Washington D.C. were involved in the subject matter, an allegation defendants presented no evidence to disprove, transfer was not appropriate).  As in Shawnee Tribe, Cameron, Sierra Club and Trout Unlimited, there has been no significant involvement by ATF officials in Washington D.C., nor is there any "real connection" between the District of Columbia and this litigation.

    The only real advantage Plaintiff receives from litigating this lawsuit in the District of Columbia is to avoid the district court in which the revocation of his license was upheld.  That is, Plaintiff is attempting to forum shop.  "Indeed, courts in this circuit must be particularly careful in examining challenges to venue 'to guard against the danger that a plaintiff might manufacture venue in the District of Columbia.'"  Holland, 360 F. Supp. 2d at 76; see also Cameron, 983 F.2d at 256 ("By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere.")  "[F]orum shopping must not be indulged in the face of multiple litigation especially where, as here, the shopper is offered an equally convenient

forum." <u>Reiffin</u>, 104 F. Supp. 2d at 54 n.12.  The District of Maryland is a more convenient

forum.  Therefore, transfer is strongly indicated under all relevant factors.

**Conclusion**

For the foregoing reasons, this case should be dismissed for lack of subject matter

jurisdiction, pursuant to Rule 12(b)(1).  In the alternative, if the Court finds that it could exercise

jurisdiction, Defendant respectfully requests that the case be transferred to the District of

Maryland, pursuant to 28 U.S.C. § 1404.


June 15, 2006                                    Respectfully submitted,


                                                 _____
                                                 KENNETH L. WAINSTEIN, D.C. Bar # 451058
                                                 United States Attorney


                                                 _____
                                                 RUDOLPH CONTRERAS, D.C. Bar # 434122
                                                 Assistant United States Attorney

                                                       /s/
                                                 _____
                                                 ALAN BURCH, D.C. Bar # 470655
                                                 Assistant United States Attorney
                                                 555 4th St., N.W.
                                                 Washington, D.C. 20530
                                                 (202) 514-7204
                                                 alan.burch@usdoj.gov

Of Counsel:

Stephen R. Rubenstein
Chief Counsel

Joel J. Roessner
Associate Chief Counsel (Litigation)
Bureau of Alcohol, Tobacco, and Firearms


20