IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RSM, INC. (d/b/a VALLY GUN) | : |
| | : |
| v. | : Civil No. WMN-05-847 |
| | : |
| ARTHUR W. HERBERT | : |

**<u>MEMORANDUM</u>**

Petitioner RSM, Inc. has petitioned this Court pursuant to 18 U.S.C. § 923(f)(3) for a <u>de novo</u> review of the decision made by the Bureau of Alcohol, Tobacco, and Firearms (ATF) to revoke its Federal Firearm License. Respondent, the Director of Industry Operations for the Washington Field Office of the ATF, has moved for summary judgment, arguing that the undisputed facts establish that RSM committed willful violations of the laws regulating the sale of firearms and that no discovery or hearing in this matter is necessary. Paper No. 6. The Court concludes that no discovery or hearing is required and that Respondent is entitled to summary judgment.

Federal Firearm Licensees are subject to two major recordkeeping requirements. First, a licensed dealer must maintain a bound book for recording the acquisition and disposition of every firearm that enters and leaves its inventory. (hereinafter, the A&D Book). <u>See</u> 27 C.F.R. § 478.125(e). This requirement includes weapons that are left for

repair and remain in the possession of the dealer overnight.[1]
Second, gun dealers are required to complete a Firearm
Transaction Record, or "Form 4473" for every firearm that they
sell.  These Form 4473s include information about the weapon
being sold and the purchaser, as well as a series of questions
which enable the dealer to determine whether that individual can
legally purchase the weapon.

In July 1997, the ATF conducted an inspection of RSM's
inventory and records and discovered numerous deficiencies in
RSM's A&D Book,  incorrectly or incompletely filled-out Form
4473s, and 45 missing firearms (that is, firearms which should
have been on the premises based upon the records in the A&D Book
but could not be found in the physical inventory).  In November
1999, the ATF conducted another inspection and found more

---

[1] The regulations speak of "acquisitions," and do not distinguish between firearms "acquired" for purposes of repair and those acquired for sale.  27 C.F.R. § 478.125 (e) ("The purchase or other acquisition of a firearm shall . . . be recorded not later than the close of the next business day following the date of such purchase or acquisition."); Shyda v. Director, Bureau of Alcohol, Tobacco and Firearms, U. S. Dept. of Treasury 448 F. Supp. 409, 413 (D.D.C. 1977).  See also Pinion Enterprises, Inc. v. Ashcroft, 371 F. Supp. 2d 1311, 1313 (N.D. Ala. 2005) (affirming revocation of license based in part on licensee's failure to record guns received for repairs in its acquisition and disposition records); Breit & Johnson Sporting Goods, Inc. v. Ashcroft, 320 F. Supp. 2d 671, 676 (N.D. Ill. 2004) (same).

discrepancies in the A&D Book, more improperly completely Form 4473s, and more missing weapons. A "Warning Conference" was held with RSM's president, Sanford Abrams, in January of 2000 at which Mr. Abrams indicated that he understood the record keeping requirement and would attempt to do better in the future. Mr. Abrams was warned that future violations could result in the revocation of RSM's firearm dealer license.

    The ATF completed another inspection of RSM in September of 2001. Again, the ATF found problems in the A&D Book, the Form 4473s, and, this time, 133 missing weapons. In addition, the inspection revealed that RSM had failed to accurately record information regarding a "National Firearms Act" weapon[2] found in its inventory, failed to record National Criminal Instant Background Check (NICS) information within the prescribed time period, and failed to complete numerous reports of multiple handgun sales as required under ATF regulations. This inspection led to a second Warning Conference which included additional assurances from Mr. Abrams that he understood the relevant record keeping requirements and would strive to improve his compliance. Mr. Abrams was also given the repeated warning that continued violations would lead to the revocation of RSM's license.

---

    [2] National Firearm Act weapons are highly regulated weapons such as machine guns, sawed off shotguns, and silencers that are subject to special registration requirements. <u>See</u> 26 U.S.C. § 5841 <u>et seq.</u> The particular weapon found in RSM's inventory during this particular inspection was a silencer.

The ATF conducted another inspection in May of 2003.  As the reader might anticipate, the inspection again uncovered numerous problems with the RSM's A&D Book and Form 4473s.  Specifically, of the 1,524 firearms that should have been on the premises according to the A&D Book, only 1,052 were initially found in the inventory, leaving 472 unaccounted for.  After the ATF gave RSM the opportunity to reconcile its inventory, the difference was reduced to 422.  (RSM found 37 of the missing guns in its inventory and records for the sale of 13 more.)[3]  In the A&D Book used to record firearms accepted for repair, records for 456 of the 475 weapons listed did not include information regarding the disposition of the weapon.  Finally, the inspection revealed that RSM had failed to properly record A&D information related to three NFA firearms and had transferred a firearm after the NICS approval period had expired.[4]

As a result of this inspection, the ATF issued a Notice of Revocation of License on May 5, 2004.  RSM requested a hearing that was held on October 6, 2004.  On October 29, 2004, the

---

[3] The number of unaccounted-for weapons was later reduced to 287.  Hearing Transcript (Tr.) 107.

[4] Once a NICS check is completed, the transfer must take place within 30 days.  See 27 C.F.R. § 178.102(c).  Once that time period expires, a new background check on the purchaser must be completed before the weapon can be transferred to that individual.  RSM acknowledges that the transfer in question took place 36 days after the NICS approval was obtained and no subsequent background check was undertaken.

hearing officer issued a 28-page report finding that all of the claims against RSM were substantiated by undisputed evidence and that RSM's violations were "willful." Consistent with those findings, the hearing officer concluded that revocation of RSM's license was appropriate. Respondent issued a Final Notice of Revocation on February 2, 2005, but stayed the effective date of revocation while RSM sought judicial review.

Under the de novo standard of review for a decision of the ATF, this Court may give the agency's finding and decision "'such weight as it believes they deserve,' but need not accord any particular deference to those findings." Article II Gun Shop, Inc. v. Ashcroft, Civil Action No. 03-4598, 2005 WL 701053 (N.D. Ill. March 25, 2005)(quoting Stein's Inc. v. Blumenthal, 649 F.2d 463, 467 (7th Cir. 1980)). Where appropriate, the reviewing court can receive and consider evidence in addition to that submitted in the administrative proceeding. DiMartino v. Buckles, 129 F. Supp. 2d 824, 827 (D. Md. 2001). The court can grant summary judgment, however, without conducting an evidentiary hearing if it is clear from the pleadings and exhibits that no genuine issue of material fact exists. Id.

Notwithstanding the posture of this case as an appeal of an administrative decision, the summary judgment standard is the same as in any other civil action. A district court may grant summary judgment when reviewing a firearms license revocation

5

pursuant to 18 U.S.C. § 923(f)(3), provided no issues of material fact are in dispute. DiMartino v. Buckley, 19 Fed. Appx. 114, 115 (4th Cir. 2001). In determining whether there is a genuine issue of material fact, the district court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996). The non-moving party, however, may not rely upon the mere allegations of his complaint. Rather, its response must, with affidavits or other verified evidence, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the adverse party fails to so respond, summary judgment, if appropriate, shall be entered. Fed. R. Civ. P. 56(e).

Under 18 U.S.C. § 923, "the ATF may revoke a firearm dealer's license if the dealer willfully violates any statute or regulation governing the firearms industry." Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 348 F. Supp. 2d 1299, 1302 (S.D. Ala. 2004). While "willfulness" must be found in order to support a revocation decision, there is no requisite quantum of violations that must be identified: "A single violation is sufficient for denying an application or revoking a license." DiMartino, 129 F. Supp. 2d at 827 (emphasis in original). This Court's role is to determine whether there was "substantial" evidence of a willful violation. Stein's Inc., 649 F.2d at 467. While the district court makes that

determination de novo, once that determination is made, the district court must defer to the ATF's selection of the appropriate penalty.  Id. ("Selecting an appropriate penalty for the violations found is a matter committed to the [agency's] discretion.").  Thus, the district court's only role in reviewing the choice of a penalty is to determine whether the penalty imposed was "authorized."  18 U.S.C. § 923(f)(3); Stein's, 649 F.2d at 464 n.2.

Petitioner raises a variety of arguments to show that some of the deficiencies identified by the ATF inspectors were not actual violations of federal firearms regulations.  For example, among the deficiencies on Form 4473s was the failure to indicate the type of firearm in box 16 of the Form 4473s.  RSM argues that, while 27 C.F.R. § 478.124(c) may require dealers to identify the type of firearm, the regulations do not require that it be identified in box 16.  Opp'n 19-20.  RSM contends it complied with the regulations by identifying the type of firearm in box 27 of the Form 4473s.

Elsewhere in its opposition, RSM attempts to downplay the scope of its violations.  Noting that errors were found on only 24 of the 345 Form 4473s reviewed, and that each form required 37 different entries to be made, RSM calculated its error rate to be only .2%.  Id. 18-19.  Similarly, noting that it only transfered a firearm on one occasion based on a expired NICS check but transferred firearms on 344 occasions on unexpired NICS checks, RSM asserts that its error rate in that regard was only .3%.  Id.

7

19.  RSM also argues, at length, that some of the alleged violations cited by Respondent cannot form the basis for revocation as they took place outside of the applicable statute of limitations.  Id. 27-36 (citing the five year limitations period of 28 U.S.C. § 2462).

Without commenting on the merits of any of these arguments, the Court notes that, even assuming their validity, there remain numerous violations that Petitioner does not contest and that undisputedly occurred within the limitations period.  RSM acknowledges that there were 70 firearms sold after May 4, 1999, that were not entered into the A&D book.  See id. 7.  RSM concedes that there were errors on 24 Form 4473s.  See id. 8.  RSM does not dispute that in December of 2002, it transferred a firearm 6 days after the 30-day limitation on NICS checks.  See id. 8-9.  Thus, while RSM may challenge the numerousness or seriousness of its violations of federal firearms law, it makes no credible argument that there were no violations.

Instead, the primary thrust of Petitioner's pleading is that the violations that it did make were not "willful."  Under Petitioner's definition of willfulness, Respondent has the burden to prove that RSM acted "intentionally and purposely and with the intent to do something the law forbids."  Opp'n 16.  While admitting violations, RSM attributes its violations to "human error" or deems them "inadvertent, technical record-keeping errors."  Compl. ¶¶ 23, 24, 28.  Mr. Abrams repeats this "human error" theme throughout his testimony at the administrative

8

hearing.  When asked why there were so many open entries in RSM's
A&D Book, he responds, "Human error.  The guns were sold,
paperwork has been mislaid."  Tr. 189.  When asked why three NFA
weapons dispositions were not recorded, he responded, "[j]ust
human error; forgot."  Tr. 197.  In his testimony, Mr. Abrams
expressed his own frustration that his employees continue to make
mistakes:

> So I tried to impress upon them as much
> as possible, and tried to check up on them as
> much as possible as they were doing their
> work.  Has some of these things got lost,
> misplaced?  I don't know.  I mean, I am
> extremely frustrated that this had continued
> to happen; I lost many nights of sleep on it;
> my stomach has been in, you know, basically
> destroyed, because I can't figure out - we
> keep doing the best we can and we still keep
> coming up with mistakes.
>
> The only thing I can say is that when
> you sell an awful lot of firearms in a short
> period of time, like at a gun show or during
> hunting season, the chance of error rates go
> up.  I think if you check the dates, you'd
> find that a lot of these errors were in our
> busiest seasons.  And it's no excuse, I'm
> just explaining it.

Tr. 262-63.

The term "willful" is not defined in the statute.  Courts
interpreting the statute, however, have reached near unanimous
consensus[5] that "a bad purpose or evil motive is not required"

---

[5] The only court taking a view consistent with that taken by Petitioner is <u>Rich v. United States</u>, 383 F. Supp. 797 (D. Ohio 1974).  The holding in <u>Rich</u> has been soundly rejected by other courts interpreting § 923.  See <u>3 Bridges, Inc. v. United States</u>, 216 F. Supp.2d 655, 658 (E. D. Ky. 2002) (observing that "[<u>Rich's</u>] holding finds no other support in the case law, and has been expressly rejected in <u>Perri [v. Department of Treasury,</u>

for a finding of willfulness.  <u>Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives</u>, 415 F.3d 1274, 1276 (11th Cir. 2005).  As the Eleventh Circuit explained in a decision issued just last year, "[a] firearms dealer is considered to have acted willfully under § 923 if, <u>with knowledge of what the regulations require, the dealer repeatedly violates those regulations</u>."  <u>Id.</u> at 1276-77 (emphasis added).  In support of this definition of willful, the Eleventh Circuit cited decisions from five other circuit courts of appeals, including the Fourth Circuit.[6]

The undisputed evidence, including Mr. Abrams' own testimony, conclusively establishes that RSM was well aware of the regulations imposed on federal firearms dealers and yet, despite that knowledge, continued to violate those same regulations.  Thus, RSM's conduct clearly meets the definition of willful.  While Mr. Abrams may seek to minimize the significance of RSM's errors or to excuse its non-compliance by citing the busyness of gun shows and hunting seasons, the undisputed fact is that because of RSM's lapses, scores of firearms are unaccounted

---

<u>Bureau of Alcohol, Tobacco and Firearms</u>, 637 F.2d 1332, 1336 (9th Cir. 1981)] and <u>Cucchiara [v. Secretary of the Treasury</u>, 652 F.2d 28, 30 (9th Cir. 1981)]).

[6] <u>Prino v. Simon</u>, 606 F.2d 449, 451 (4th Cir. 1979); <u>Stein's, Inc.</u>, 649 F.2d at 467 (Seventh Circuit); <u>Appalachian Res. Dev. Corp. v. McCabe</u>, 387 F.3d 461, 464-65 (6th Cir. 2004); <u>Lewin v. Blumenthal</u>, 590 F.2d 268, 269 (8th Cir. 1979); <u>Perri</u>, 637 F.2d at 1336 (Ninth Circuit).

for, and therefor, untraceable.  As one court recently observed,

> the gravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint and a safety standpoint, strongly militates in favor of allowing the ATF to insist on total compliance as a condition of retaining the privilege of dealing in firearms.  Indeed, the Supreme Court has noted that one purpose of the Gun Control Act is "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous."  Barrett v. United States, 423 U.S. 212, 218 [] (1976).  Where a dealer does not properly maintain ATF records to the agency's exact specifications, the ATF's ability to fulfill its legislative mandate may be compromised.  See 3 Bridges, 216 F. Supp. 2d at 659.  If ever there were a statutory scheme where a licensee should be obligated to "sweat the details," irrespective of how trifling they may appear, the Gun Control Act would appear to fit that bill.

Willingham Sports, 348 F. Supp. 2d at 1309.

As there is substantial evidence of willful violations on the part of RSM, and as the revocation of a dealer's license is clearly an authorized response to violations of the regulations, see 18 U.S.C. § 923(e), the Court therefore will grant Respondent's motion for summary judgment and dismiss RSM's Petition.  A separate order consistent with this memorandum will issue.

/s/
_____
William M. Nickerson
Senior United States District Judge

Dated: February 23, 2006